UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| ELIJAH PAGE,<br><br>PLAINTIFFS,<br><br>vs.<br><br>CLARK COUNTY FIRE DISTRICT 6;<br>CHIEF KRISTAN MAURER,<br>individually and as an employee of<br>Clark County Fire District 6; CHIEF<br>DAVID RUSSEL, individually and as<br>an employee of Clark County Fire<br>District 6; CHIEF DAVID SCHMITT,<br>individually and as an employee of<br>Clark County Fire District 6; CAPTAIN<br>ERIC SIMUKKA, individually and as<br>an employee of Clark County Fire<br>District 6; JON ERICKSON,<br>individually and as an employee of<br>Clark County Fire District 6,<br><br>DEFENDANTS. | No. 3:23-CV-5849<br><br>**COMPLAINT FOR DAMAGES AND<br>DEMAND FOR JURY**<br><br><br>**[JURY DEMAND]** |

## I.    INTRODUCTION

1.1    Elijah Page, a black male and former sheriff's deputy, transitioned from

law enforcement to a firefighter position at Clark County Fire District 6 (CCFD6) in

April 2022. His time at CCFD6 was marred by racial discrimination in June when a

white recruit, John Erickson, assaulted Page by placing a noose around his neck and simulated a lynching.

1.2    None of the CCFD6 who watched the assault intervened or objected at the time of the assault.

1.3    The administration at CCFD6, including the Chief, looked into the assault and found that it did occur, but ultimately downplayed the severity of it and in internal records referred to Page as only "the recipient of the action," rather than acknowledging him as a victim of a crime.

1.4    CCFD6 policy required the department administration to report the hate crime to the police, but instead the CCFD6 administration attempted to cover up what had occurred.  They illegally ordered Page and other witnesses not to report the assault to anyone, a move motivated by a desire to avoid negative publicity ahead of a tax levy vote. That order was illegal and contradicted several of the district's own policies.

1.5    When Erickson separated from CCFD6, Chief Kristan Maurer, despite knowing Erickson committed a hate crime, wished Erickson well in his future and assured him that she would not tell potential future employers what Erickson did.

1.6    Erickson's racial assault of Page, followed by CCFD6's effort to sweep it under the rug, caused Page extreme emotional suffering, and created a hostile and dangerous environment which forced Page from CCFD6.

1.7    The assault on Page was witnessed by multiple CCFD6 members. Witness statements are attached as Exhibits 1 through 6 of this Complaint.

## II.    PARTIES

2.1    Plaintiff ELIJAH PAGE was at all times relevant a citizen of the United States residing in Clackamas County, Oregon.

2.2    Defendant CLARK COUNTY FIRE DISTRICT 6 (CCFD6) was at all times material to this action operating and existing in Clark County, Washington.

2.3    Defendant CHIEF KRISTAN MAURER was at all relevant times a resident of Clark County, Washington, and employee of CCFD6, acting as an employee of CCFD6. Chief Kristan Maurer is being sued both in her individual capacity, personal capacity, and official capacity.

2.4    Defendant CHIEF DAVID RUSSEL was at all relevant times a resident of Clark County, Washington, and employee of CCFD6, acting as an employee of CCFD6.  Chief David Russel is being sued both in his individual capacity, personal capacity, and official capacity.

2.5    Defendant Assistant CHIEF DAVID SCHMITT was at all relevant times a resident of Clark County, Washington, and employee of CCFD6, acting as an employee of CCFD6.  Assistant Chief David Schmitt is being sued both in his individual capacity, personal capacity, and official capacity.

2.6    Defendant CAPTAIN ERIC SIMUKKA was at all relevant times a resident of Clark County, Washington, and employee of CCFD6, acting as an employee of CCFD6.  Captain Eric Simukka is being sued both in his individual capacity, personal capacity, and official capacity.

ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

2.7    Defendant JON ERICKSON was at all relevant times a resident of Clark County, Washington, and employee of the CCFD6, acting as an employee of CCFD6. Jon Erickson is being sued both in his individual capacity, personal capacity, and official capacity.

## III.    JURISDICTION AND VENUE

3.1    This action is brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986, 1988, 2000e *et seq.*, the First and Fourteenth Amendments of the United States Constitution, common law, and RCW 49.60 *et seq.*

3.2    Jurisdiction is founded on 28 U.S.C. §§ 1331, 1332, and 1343 and the aforementioned statutory and constitutional provisions.

3.3    This court can and should exercise supplemental jurisdiction over state claims and other parties under 28 U.S.C. § 1367(a), as the other claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.4    All parties are resident in or were doing business in Clark County, Washington, and the Western District of the United States Federal Court for Washington, and are citizens of the United States of America.

3.5    Venue is proper in this District pursuant to 28 U.S.C. § 1391 as a substantial part of the events and omissions giving rise to the claims asserted herein occurred in Clark County, Washington, which is in this court's district and division.

3.6    The complaint is timely filed within the applicable statute of limitations. The appropriate statute of limitations is Washington's three-year statute for personal

injury claims. RCW 4.16.080. The United States Supreme Court and the Ninth Circuit have held that 42 U.S.C. § 1983, which does not contain a statute of limitations, adopts the relevant statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261 (1985); *Stanley v. Trustees of California State University*, 433 F.3d 1129 (9th Cir. 2006).

## IV.    FACTUAL ALLEGATIONS

4.1    Elijah Page, a 41-year-old black male, spent his early years in Tacoma, Washington, before moving to Vancouver, Washington in his childhood.

4.2    After successfully graduating from Eastern Oregon University, Page began his professional journey as a personal banker at Wells Fargo bank and later advanced to the position of financial advisor.

4.3    During his time at Wells Fargo, his work performance, attitude, and teamwork consistently earned positive reviews from all his supervisors and leads.

4.4    Transitioning from finance to law enforcement, Page started working as a corrections deputy at the Clark County Sheriff's Office (CCSO) in 2015. His tenure as a corrections deputy was unblemished, despite facing racially motivated insults from jail inmates, which he handled with resilience and professionalism.

4.5    In 2018, Page attended the Washington State Police Academy to further his law enforcement skills and credentials.

4.6    The same year, after successful completion of his training, Page was hired as a fully commissioned deputy by the CCSO.

4.7     While at CCSO, he trained under field officers Jack Phan, Mark Anderson, and Tom Maxfield, continuing to serve as a deputy until 2022.

4.8     Page was a patrol deputy for the CCSO. Known for his impressive work ethic and adept interaction skills with both the public and colleagues, Page swiftly made a mark in his new position.

4.9     In 2020, Page was recognized for his outstanding performance with the Exemplary Performance Award from the CCSO. The award applauded his exemplary work and dedication to community service.

4.10     Exemplifying his strong work ethic, Page's 2021 Performance Evaluation echoed his quality as a deputy. With ratings mostly being 4's, 4.5's, and 5's, Page was characterized as "Meets Standard," "Exceeds Requirements," "Exceptional," and "Exceeds Standards" by his supervisors. An excerpt from a supervisor's commentary reads, "Deputy Page has also remained extremely busy and a total team player while completing his more complex investigations...He is efficient throughout the day with his workload, and he provides an excellent work product." Another quote stated, "Along with working extremely hard, Deputy Page is fun and well-liked by his squad mates...I have submitted Deputy Page for the 2020 Deputy of the Year. He is an asset to this department."

4.11     In June of 2021, Page received an Appreciation Letter from Clark County Sheriff Chuck Atkins, commending him for his exceptional efforts.

4.12     In the same year, Page's hard work was further recognized as he was nominated for the CCSO Deputy of the Year 2021.

4.13    After a serious incident at the Portland riots in 2021, Page was awarded the Police Blue Star medal by Portland Police Department Chief Lovell. The award acknowledged his "great personal sacrifice resulting in serious physical injury", following an event where he was struck in the head by a projectile.

4.14    In February 2022, Page nominated for a life-saving award following his quick and efficient provision of emergency medical aid to a shooting victim.

4.15    Later, Elijah Page was awarded "The Fire Medal" by the Vancouver Fire Department for his extraordinary effort in saving a human life during an active shooter incident. He applied life-saving medical care to a victim until VFD arrived.

4.16    After a friend of Page's was killed while on duty, Page began considering alternative career options.

4.17    Page enrolled in an Emergency Medical Technician (EMT) course and successfully completed it. This course tuition was $2,500.

### *Page Applies for CCFD6*

4.18    In January 2022, Page applied for a firefighter position at Clark County Fire District 6 (CCFD6).

4.19    The pre-employment background investigation by CCFD6 revealed that Elijah Page was universally respected by his colleagues and supervisors at the CCSO. Their observations underscored his reliability, dedication, compassion, professionalism, and efficacy in his work.

4.20    Excerpts from the feedback received from Page's supervisors and colleagues at CCSO, which illustrate his strong character and work ethic, are as follows:

4.20.1 "Elijah takes his job seriously. He is effective, particularly in his role of helping others. He is very reliable, dedicated, and compassionate about his work. He responds to his calls and completes his reports in a timely manner."

4.20.2 "Elijah has an excellent attitude and a high degree of professionalism. He has a reputation for being effective. As a Corrections Deputy and later as an Enforcement Deputy, he was always courteous, attentive, and responsive to the public."

4.20.3 "Elijah is a team player and always looks to help those around him. He has shown to be very good at helping members of the community. He is a trustworthy, detail-oriented worker who requires little supervision and is always eager to learn."

4.20.4 "Elijah is a highly responsible and capable individual with a genuine gift and desire to help others. He goes above and beyond to complete any project he is passionate about."

4.20.5 "The term 'selfless' comes to mind when I think of Elijah. Whether on or off duty, he always looks to serve and help anyone in need."

4.20.6 "Elijah is a natural leader and hard worker with a magnetic personality that makes him a pleasure to be around."

ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

4.20.7 "Elijah works effectively as a team member and always gets along well with coworkers and supervisors. He is always eager to learn from coworkers with more experience and mentor younger, less experienced coworkers."

4.20.8 "Elijah is a genuine, hard-working individual who has a passion for public service. Any agency would be lucky to have him as an employee. His passion brings out the best in himself and those around him."

4.20.9 "His commitment to others is clearly at the forefront of his professional goals."

4.21   One particular incident, noted by Page's supervisor, demonstrated his resourcefulness and determination. Responding to a lost child call, Page located the child unresponsive in a stream. Using his EMT training, he applied life-saving measures, including CPR, until the fire department and emergency medical aid units arrived on the scene. The fire department scene supervisor commended Page for his outstanding job.

4.22   The CCFD6 pre-employment report for Character & Integrity noted Page consistently demonstrates high standards of integrity both personally and professionally. He is highly regarded in the sheriff's office for his dedication to serving the community and his compassion towards colleagues, inmates, and the public. He has never been suspected of dishonesty, untrustworthiness, or unethical behavior,

nor has he violated anyone's trust or confidence. Among the comments about his character and integrity:

> 4.22.1 "Elijah's integrity has never been a question. He tells you the truth even if it's something you don't want to hear, but does it with a kind and genuine approach that shows he cares."

> 4.22.2 "Elijah is an honest person. His actions and intentions are always truthful and genuine."

> 4.22.3 "I've worked with Page during sensitive and traumatic incidents. I've trusted and will continue to trust him with my life. He holds himself to a high standard whether the public is watching or not."

> 4.22.4 "Working in public safety requires a person with utmost honesty and integrity. I have never witnessed anything otherwise from Elijah."

4.23    The CCFD6 pre-employment report for Judgment & Emotional Stability noted Page exhibits good judgment and emotional stability, even under stress. He is praised for his calm decision-making skills and for being someone people can rely on in emergencies. Among the comments about his judgment and emotional stability:

> 4.23.1 "Page handles extremely stressful incidents calmly and empathetically. He will be a valued asset to any team he joins."

> 4.23.2 "Elijah remains calm and collected, making sound decisions under stressful situations."

> 4.23.3 "Elijah deals with difficult problems and emergencies calmly and logically, weighing out options and reacting thoughtfully."

COMPLAINT AND DEMAND
No. 3:23-CV-5849

10

ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

4.24    The CCFD6 pre-employment report for Reliability, Dependability & Accountability noted Page is reliable and dependable, both personally and professionally. He follows through on his commitments and completes assigned tasks promptly. Among the comments about his reliability and dependability:

> 4.24.1 "Elijah is a man of his word. I have had no issues with him keeping his commitments."

> 4.24.2 "Elijah always keeps his work schedule a priority and plans around it accordingly."

> 4.24.3 "Working alongside Elijah, I trust him with my personal safety every day. He takes his job and the safety of others seriously."

> 4.24.4 "I would trust Page with my life and the life of my family. I believe he will grow into a phenomenal Firefighter."

4.25    The CCFD6 pre-employment report for Communications & Customer Service Skills noted Page is an outstanding communicator, even under pressure and in emergencies. He cares about people and always does the right thing. Among the comments about his communication and customer service skills:

> 4.25.1 "Elijah loves to serve others. He is caring, compassionate, and a great communicator."

> 4.25.2 "He is always willing to help. When there was a flood on our street, Elijah was the first one out there clearing debris and alerting sleeping neighbors."

### *Page Hired by CCFD6*

4.26    In April 2022, Page accepted a position at CCFD6 and left his full-time employment with CCSO.

4.27    At around the same time, CCFD6 also hired John Erickson, a white male.

4.28    Page was given a starting base salary of $6,210 a month, while Erickson was offered a starting base salary of $9,758 a month.

### *Page is Victim of Hate Crime*

4.29    In early June, 2022, Page's class was conducting training on knot tying.

4.30    New hires had been given ropes to practice tying the knots.

4.31    The ropes were approximately 10 feet long and one half inch thick.

4.32    The rope was like those used in rock climbing or rappelling.

4.33    The new hires were practicing their knots in a classroom at CCFD6.

4.34    During a training break Page took the opportunity to speak with his wife on his mobile phone while sitting in his class desk chair.

4.35    While Page was talking with his wife, Erickson plotted to assault Page based on Page's race or color.

4.36    Erickson fashioned his rope into a noose and snuck up behind Page.

4.37    Erickson quickly threw the noose over Page's head and around his neck.

4.38    Once Erickson had the noose around Page's neck, Erickson pulled on the rope and tightened the noose around Page's neck.

12

4.39    Page felt the sting of the noose as Erickson pulled the rope tight from behind Page.

4.40    Page quickly escaped and pulled the noose from his neck.

4.41    Page looked at the noose in horror, shock, and embarrassment.

4.42    Page realized that he had just been subjected to a simulated lynching.

4.43    Page realized his entire class could see Erickson lynch him, but not one of them objected.

4.44    This was the most embarrassing and humiliating thing Page had ever experienced in his entire life.

4.45    In fact, many, if not all, of Page's CCFD6 classmates actually watched Erickson throw the noose around Page's neck.

4.46    None of Page's class mates intervened in the lynching.

4.47    None of them even voiced an objection before or during the lynching.

4.48    Some of the classmates viewed the hate crime as a "joke."

4.49    Page was emotionally devastated and outraged by the assault and by the fact that none of his classmates did anything to stop it.

4.50    As a black man, Page was aware of the historical context and racial significance of lynching.

4.51    Despite his shock and anger, Page mustered every bit of professionalism and integrity, and told Erickson that he was "deeply offended."

4.52    As a former law enforcement officer, Page recognized that the simulated lynching was a 4th-degree assault under RCW 9A.36.041, and a felony hate crime under RCW 9A.36.080.

4.53    At the time of the assault, Page wrongly believed CCFD6 would fully and reasonably address the crime committed against him.

4.54    But CCFD6 did not reasonably respond to the assault on Page.

4.55    CCFD6 did not even follow its own policy in responding to the assault.

4.56    In fact, the CCFD6 administration directly violated its own policy in an effort to downplay and cover up the assault.

4.57    CCFD6 did this because it wanted to hide the assault from the public in the months ahead of the upcoming vote on a tax increase proposed by CCFD6.

4.58    Chief Maurer, Chief David Russel, Assistant Chief David Schmitt, and Captain Eric Simukka were informed about the assault on the same day it occurred.

4.59    On or about June 7th, 2022, there was a conference call between Assistant Chief Russell, Assistant Chief Schmitt, and Chief Maurer.

4.60    During that call Maurer was told Erickson had tied a rope in a noose and threw it over Page's head and around his neck.

4.61    Later that day Chief Maurer called the Chairman of the CCFD6 board and advised him of what Erickson had done.

4.62    Chief Mauer was careful not to put that communication with the Chairman in writing.

4.63    CCFD6 then investigated Erickson's assault on Page.

COMPLAINT AND DEMAND
No. 3:23-CV-5849

14

ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

4.64    CCFD6 found that there were numerous eyewitnesses to the assault.

4.65    CCFD6 took witness statements.

4.66    Chief Maurer was the senior most member of CCFD6 and had supervision and control of all employees of CCFD6.

4.67    Chief David Russel, Assistant Chief David Schmitt, and Captain Eric Simukka worked below Chief Maurer, but above Page in the chain of command.

4.68    Chief Maurer, Chief David Russel, Assistant Chief David Schmitt, and Captain Eric Simukka all had the ability and authority to impact Pages work environment.

4.69    Assistant Chief Schmitt was in charge of administrative matters for CCFD6 at all times relevant in this case.

4.70    Assistant Chief Schmitt was the one who informed the Chief Maurer about the assault on the same day it occurred.

4.71    Assistant Chief Schmitt later provided Chief Maurer a formal summary of the assault in June, 2022.

4.72    A redacted copy of Recruit [1]'s statement is attached as **Exhibit 1**.

4.73    A redacted copy of Recruit [2]'s statement is attached as **Exhibit 2**.

4.74    Recruit [2] noted "I heard Elijah say in an upset voice 'Don't f — ing do that again. I take extreme offense to that."

4.75    A redacted copy of Recruit [3]'s statement is attached as **Exhibit 3**.

4.76    Recruit [3] noted s/he saw Erickson "was placing a noose over [Page's] head."

4.77    A redacted copy of Recruit Riley Hawken's statement is attached as **Exhibit 4**.

4.78    Recruit Riley Hawken wrote "I saw Jon tie a noose and place it around Elijah's neck. Elijah was caught off guard and became very offended. He continued to talk to Jon about how inappropriate it was and said he took extreme offense to it."

4.79    A redacted copy of Recruit Riley Lana Richards' statement is attached as **Exhibit 5**.

4.80    Recruit Richards also reported seeing the noose around Page's neck.

4.81    A redacted copy of Recruit Casey Gilberti's statement is attached as **Exhibit 6**.

4.82    The statements from the classmates show no recruit made any effort to stop Erickson from, or object to him, placing a noose around Page's neck.

4.83    None of the new recruits were disciplined or reprimanded for their failure to object to Erikson assaulting Page in front of them.

4.84    Assistant Chief Schmitt recognizing that Erickson's actions constituted a crime and provided Garrity Warnings to Erickson before speaking with him.

4.85    Erickson admitted to Assistant Chief Schmitt that he tied the rope into a noose and placed around Page's neck.

4.86    Assistant Chief Schmitt relayed Erickson's admission to Chief Maurer, Chief David Russel, and Captain Eric Simukka.

4.87    On June 9th, 2023, Chief Russel reported to Chief Maurer that Erickson had assaulted Page with a noose around the neck as originally reported.

4.88    But CCFD6 and Chief Maurer did not fire Erickson for cause.

4.89    Chief Maurer did not fire Erickson for cause because she wanted to sweep the assault under the rug.

4.90    Erickson should have been fired for cause.

4.91    Instead of firing Erickson for cause, Chief Maurer allowed Erickson to separate from CCFD6 for simply failing to complete his probationary period.

4.92    The separation letter for Erickson issued by CCFD6 did not make any reference at all to the assault on Page.

4.93    Upon Erickson's departure from CCFD6, despite her awareness of the hate crime Erickson had committed, Chief Maurer wrote to him, "We … wish you the best in future endeavors."

4.94    A copy of Erickson's separation letter is attached as **Exhibit 7.**

4.95    Chief Maurer did not want word of Erickson's assault on Page to get out.

4.96    Chief Maurer assured Erickson in an in person meeting that if future perspective employers for Erickson were to contact her as part of a background check on Erickson she would not tell them about Erickson assaulting Page.

4.97    Chief Maurer sent Erickson an email in which she wrote "I cannot imagine how hard this situation is for you and your family and I empathize with that."

4.98    In a later email Chief Maurer again assured Erickson she and CCFD6 would keep what Erickson had done to Page a secret from and perspective future employer.

COMPLAINT AND DEMAND
No. 3:23-CV-5849

17

ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

4.99  She wrote to Erickson "In Washington State we are limited to what we can disclose to future employers. Those limits include the employee's ability to perform his or her job; the diligence, skill, or reliability with which the employee carried out the duties of his or her job; any illegal or wrongful act committed by the employee when related to the duties of his or her job. Essentially, we would tell future employers exactly what your letter said, that you worked here from May 1, 2022, to June 9th, 2022, and did not successfully complete your probation period. I truly wish you the best in your future endeavors. I am always available if you have any other questions or concerns."

4.100  In a letter to Chief Maurer on June 15, Assistant Chief Schmitt wrote that there "was sufficient information available to substantiate the allegation against one individual having violated District policies and standards."

4.101  Yet, Assistant Chief Schmitt's letter noted "there will be no further action in this matter."

4.102  Assistant Chief Schmitt's letter downplayed the hate crime by referring to Page as only "the recipient of the action."

4.103  Assistant Chief Schmitt's letter never acknowledged Page was the victim of a crime even though it was clear that he was.

### *The Gag Order and Cover Up*

4.104  High-ranking officers at CCFD6, including Chief Maurer, Captain Reese, Captain Simukka, and others, violated policy and law by placing a gag order on Page when they ordered him and others not to discuss the assault with anyone.

COMPLAINT AND DEMAND
No. 3:23-CV-5849
18
ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

4.105  They specifically ordered that Page was not allowed to speak to anyone about the assault and that word of the assault was not to leave the fire station.

4.106  Chief Maurer, Captain Reese, Captain Simukka, and others, knew and believed that Erickson had assaulted Page and that the assault was racially motivated.

4.107  Chief Maurer, Captain Reese, Captain Simukka, and others, knew that CCFD6 policy placed an affirmative obligation on them to report the crime to local law enforcement authorities.

4.108  Neither Chief Maurer, Captain Reese, nor Captain Simukka reported the assault on Page to law enforcement.

4.109  CCFD6 has no record of CCFD6 or any agent of CCFD6 reporting the assault to local law enforcement.

4.110  The gag order put Page in a position where if he personally reported the crime to the police, or public, he could be fired for disobeying an order while still on probationary status.

4.111  Chief Maurer, either directed this gag order be given, was aware it was going to be given and approved of the order being given, or being aware it was given failed to take action reasonable and prompt action to countermand the illegal order.

4.112  Chief Maurer had fully authority to countermand the gag order.

4.113  Knowing the order was given to Page, Chief Maurer failed to take any reasonable action to countermand that order or to advise Page that he could report the assault without fear of termination or retaliation.

19

### *The Vote on the Levy*

4.114  Chief Maurer and other high-ranking officials at CCFD6 were motivated by their desire to cover up the assault because of the then upcoming vote in August 2022 on the tax levy for CCFD6.

4.115  The levy accounted for approximately 25% of the CCFD6 budget.

4.116  If the levy did not pass, it would significantly impact the budget, potentially leading to a reduction in the number of full-time employee positions, or cuts in pay and benefits.

4.117  That levy was the first CCFD6 levy in six years.

4.118  Chief Maurer had been actively involved in the promotion of the levy and even the crafting of informational voter handouts.

4.119  The tax revenue CCFD6 would have received if the levy passed was between $3,500,000 and $4,000,000.

4.120  CCFD6 produced a professional-grade promotional commercial for the levy, which can be viewed here: https://youtu.be/dPBuw-85Cc0.

4.121  Chief Maurer was reviewing the language of the "resolution to Submit an EMS Levy" on June 13, while the investigation into the assault was ongoing.

4.122  On July 8, 2022, the Chief Maurer participated in an "EMS Levy Question and Answer" session, which can be found here:

https://www.youtube.com/live/XUZ5pex-e5I?feature=share

4.123  The CCFD6 levy sought to raise taxes to just five cents shy of the maximum amount allowed by law.

4.124  The vote on the levy was to be held on August 2, 2022.

### *CCFD6 Policy and Training*

4.125  CCFD6 runs its own fire academy for new hires.

4.126  In his fire academy class of new firefighters at CCFD6, Page was the only person of color and the only black individual.

4.127  CCFD6 has approximately 80 full-time employees, but only one other person of color, apart from Page.

4.128  A copy of CCFD6 Policy 231 is attached as **Exhibit 8**.

4.129  According to CCFD6's Policy 231.2, improper governmental action is defined as any action by an employee performing their duties that violates state law.

4.130  Per Policy 231.3, an employee is permitted to report information about improper governmental action directly to the appropriate government agency.

4.131  However, Page was ordered not to report the assault.

4.132  That gag order was directly contrary to Policy 231.3.

4.133  A copy of CCFD6 Policy 628 is attached as **Exhibit 9**.

4.134  Policy 628.3 does not mandate discriminatory or harassment training be given to new hires until six months post-hire.

4.135  CCFD6's delay in providing such training is a significant contributing factor to the assault on Page by Erickson and the hostile work environment.

4.136  Policy 628.4 requires the Training Captain to maintain records of all harassment training, including training dates, topics, providers, attendees, and a summary of the training content.

COMPLAINT AND DEMAND
No. 3:23-CV-5849

21

ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

4.137  CCFD6 never provided a copy of Policy 628 to Jon Erickson.

4.138  CCFD6 did not train Jon Erickson on Policy 628.

4.139  CCFD6 has no record showing that it had provided a copy of Policy 628 to Erickson prior to Erickson's assault on Page.

4.140  At the time of Page's assault CCFD6 had not developed or implemented any formal training material or curriculum to address discrimination or harassment.

4.141  The absence of prompt and effective training on discrimination and harassment meant that new hires were exposed to a hostile work environment.

4.142  CCFD6's failure to provided even basic discrimination and harassment training to Erickson is a significant contributing factor to the assault on Page.

4.143  A copy of CCFD6 Policy 1022 is attached as **Exhibit 10**.

4.144  CCFD6's discriminatory harassment policy, 1022.5.3, stipulates that no part of the policy should prevent an employee from seeking external redress.

4.145  Nonetheless, CCFD6's administration violated this policy when it specifically instructed Page and other's not to discuss the assault outside of CCFD6.

4.146  Policy 1022.8 states that all new CCFD6 employees should receive access to a printed or digital copy of the 1022 discriminatory harassment policy at orientation.

4.147  Under Policy 1022.8, CCFD6 employees are required to certify their understanding and agreement with the 1022 discriminatory harassment policy by signing a prescribed form when the policy is provided to them.

4.148  CCFD6 never provide a copy of Policy 1022 to Jon Erickson.

COMPLAINT AND DEMAND
No. 3:23-CV-5849

22

ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

4.149 CCFD6 has no record evidencing that it provided a copy of Policy 1022 to John Erickson.

4.150 CCFD6 did not train Jon Erickson on Policy 1022.

4.151 Jon Erickson never certified his understanding or agreement with CCFD6 Policy 1022.

4.152 CCFD6 has no record evidencing that Jon Erickson certified his understanding or agreement with CCFD6 Policy 1022.

4.153 No class period of instruction on discriminatory harassment or associated policies was presented to the recruits in Page and Erickson's class prior to the assault.

4.154 CCFD6's failure to comply with policy 1022 is a significant contributing factor to the assault on Page.

4.155 A copy of CCFD6 Policy 1045 is attached as **Exhibit 11**.

4.156 Policy 1045.4.2 states that the district is obliged to provide appropriate training to members regarding workplace violence.

4.157 However, no workplace violence class was provided to the recruits in Page and Erickson's class prior to the assault.

4.158 CCFD6 never provide a copy of Policy 1045 to Jon Erickson.

4.159 CCFD6 did not train Jon Erickson on Policy 1045.

4.160 CCFD6 does not have any record evidencing that it provided a copy of Policy 1045 to Jon Erickson.

4.161  CCFD6 does not have any record evidencing that it trained Jon Erickson on Policy 1045.

4.162  CCFD6's failure to comply with policy 1045 is a significant contributing factor to the assault on Page.

4.163  According to CCFD6 Workplace Violence Policy 1045.4.1, any member has knowledge of an act of violence has a responsibility to report the situation to the local police department if a crime has occurred.

4.164  Policy 1045.4.2 mandates immediate notification of local law enforcement in all instances of threatening or violent behavior.

4.165  Despite awareness of Erickson's criminal actions, the administration, including Chief Maurer, failed to report the crime to the police, in violation of policy.

4.166  Instead, CCFD6 subjected Page to a gag order.

4.167  Policy 1045.10 assigns Chief Maurer the responsibility of reviewing instances of workplace violence and ensuring appropriate actions taken.

4.168  Despite being aware of what Erickson did to Page, Chief Maurer chose not to report to law enforcement that an assault had occurred.

4.169  Instead, Chief Maurer collaborated with the management team to cover up the matter and ensure Page did not discuss the matter, especially with the police.

4.170  Chief Maurer wanted to avoid negative publicity before the levy vote.

4.171  By failing to comply with policy, directly violating policy, and by directing Page and other members of the district that they could not speak about the assault, the CCFD6 management engaged in criminal activity and sent a message to

COMPLAINT AND DEMAND
No. 3:23-CV-5849

24

ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

Page and other members of CCFD6 that hate crimes would not be reported to the police and would in fact be kept quiet.

4.172 Such actions by Chief Maurer and the administration perpetuated the original harassment and was a form of harassment in its own right.

4.173 Chief Maurer and the management team's response to the assault on Page was unreasonable, inadequate, and not designed to end hate crimes and other such harassment at CCFD6.

4.174 Chief Maurer and the administration engaged in this cover up due to concerns about potential negative publicity that could impact a pending vote on a tax increase they were promoting at the time.

4.175  On information and belief, during the course of the events in this matter, from the time of Erickson's assault on Page up to and including the time that the gag order was imposed, Chief Maurer kept the CCFD6 board up to date on her handling of the situation.

4.176 On information and belief, the CCFD6 board was aware of, approved, and ratified, the actions of Chief Maurer in this matter.

4.177 Page knew he was the victim of an assault, and that the gag order was itself illegal and a violation of RCW 9A.72.120.

4.178 Page knew that he was not safe to continue working in such a hostile environment where he could be the victim of a felony hate crime and subsequently be ordered not to discuss or report that crime.

COMPLAINT AND DEMAND
No. 3:23-CV-5849

25

ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

4.179  It would have been unreasonable and unsafe for Page to trust his life to people who sat by and watched while he was subjected to a simulated lynching.

4.180  Part of Page's job as a firefighter at CCFD6 involved sleeping at the station with the same people who had sat idly by while he was assaulted.

4.181  Page was not safe sleeping in such an environment.

4.182  Page could not risk his safety by working for a management that he knew unlawfully ordered him to stay silent when he was assaulted.

4.183  Due to the unsafe and hostile work environment Page was constructively discharged and forced out of CCFD6.

4.184  As a result of being constructively discharged Page lost out on the significant long-term financial benefits.

4.185  As a result of the actions of defendants above Page has suffered extreme emotional distress.

4.186  Notice of tort claim was served on CCFD6 more than 60 days prior to the filing of this case.

## V.    CLAIM ONE
### 42 U.S.C. § 2000
### DESPERATE TREATMENT

5.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

5.2    Defendants denied Plaintiff his First Amendment right to report to law enforcement the crime of which he was a victim because of the plaintiff's race and or color.

26

5.3    Plaintiff was qualified to perform his job and was entitled by law to report to law enforcement the crime of which he was a victim.

5.4    Similarly situated individuals outside the plaintiff's race and or color were treated more favorably in that they were never denied the right to report to law enforcement a crime of which they were a victim.

5.5    The gag order placed on Plaintiff by Defendants was an adverse employment action that materially affected the conditions of employment for Plaintiff as Defendants created an environment where Plaintiff, and only Plaintiff, could be subjected to a felony assault but be barred from reporting to law enforcement.

5.6    As a result of the actions and inactions of the Defendants, Plaintiff was constructively discharged as the working conditions were so intolerable that a reasonable person in the plaintiff's position would feel compelled to resign.

5.7    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## VI.    CLAIM TWO
### 42 U.S.C. § 2000
### HOSTILE WORK ENVIRONMENT

6.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

6.2    Plaintiff was subjected to physical contact and intimidation of a racial nature because of his race and or color.

COMPLAINT AND DEMAND
No. 3:23-CV-5849

27

ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

6.3    That conduct was unwelcome.

6.4    That conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create a racially abusive or hostile work environment.

6.5    Plaintiff perceived the working environment to be abusive or hostile.

6.6    A reasonable woman or man in the plaintiff's circumstances would consider the working environment to be abusive or hostile.

6.7    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## VII.   CLAIM THREE
### 42 U.S.C. § 2000
### HOSTILE WORK ENVIRONMENT CAUSED BY CO-WORKER

7.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

7.2    Plaintiff was subjected to a racially hostile work environment by a non-immediate supervisor and or co-worker.

7.3    The defendants or a member of the defendant's management knew or should have known of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment.

7.4    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount

to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## VIII.  CLAIM FOUR
### 42 U.S.C. § 2000
### HOSTILE WORK ENVIRONMENT CAUSED BY SUPERVISOR

8.1     Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

8.2     Plaintiff was subjected to, and was the victim of, a felony hate crime based on his race or color while at work.

8.3     Plaintiff was ordered by his supervisors not to speak of the assault and thereby barred from reporting the crime to law enforcement.

8.4     The plaintiff was subjected to a racially hostile work environment by his supervisors.

8.5     As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## IX.     CLAIM FIVE
### 1ST AMENDMENT 42 U.S.C. § 1983-1988
### GAG ORDER

9.1     Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

9.2    Plaintiff was ordered by his supervisors not to speak of the assault and thereby barred from reporting the crime to law enforcement in his capacity as a private citizen.

9.3    The ongoing requirement that Plaintiff forgo his 1st Amendment right was a continual and ongoing adverse employment action as it created a hostile work environment and constructively discharged Plaintiff.

9.4    Defendants would not have issued the gag order if not for fear that Plaintiff would exercise his right to report the crime.

9.5    Plaintiff had a right under the 1st Amendment to report that crime to law enforcement.

9.6    The hate crime committed on Plaintiff by a public employee at a place of public employment was a matter of public concern.

9.7    Racially motivated violence committed by a public employee is a matter of public concern.

9.8    The State of Washington has declared that the practices of discrimination based on race or color is a matter of state concern, and that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state. RCW 49.60.010.

9.9    An employee may bring a First Amendment claim if he is prohibited or prevented from speaking on a matter of public concern. *See, e.g., Moonin v. Tice*, 868 F.3d 853 (2017); *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999); *Farhat v.*

30

*Jopke*, 370 F.3d 580, 598 (6th Cir. 2004*); Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 724 (2021).

9.10    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## X.    CLAIM SIX
### 42 U.S.C. § 1983-1988
### OBSTRUCTING JUSTICE - CONSPIRACY

10.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

10.2    Defendants conspired to interfere with Plaintiff's right to due process and freedom of speech by imposing the gag order that barred him from reporting the assault to the local law enforcement and thereafter testifying in court about the same.

10.3    Defendants did so because of Plaintiff's race or color and thereby deprived him of his first amendment rights because of race.

10.4    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## XI.    CLAIM SEVEN
### 42 U.S.C. § 1983-1988
### NEGLECT TO PREVENT

11.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

11.2    Chief Kristan Maurer was not only aware of the gag order and approved of it, but also neglected or refused to prevent the gag order.

11.3    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## XII.    CLAIM EIGHT
### RCW 9A.36.083
### HATE CRIME

12.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

12.2    Defendant John Erickson, maliciously and intentionally caused physical injury to the Plaintiff and or threatened a Plaintiff because of his perception of the Plaintiff's race or color.

12.3    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## XIII.  CLAIM NINE
### STATE LAW
### BATTERY

13.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

13.2    Defendant John Erickson intended to, and did in fact, cause harmful or offensive contact to Mr. Page.

13.3    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## XIV.  CLAIM TEN
### RCW 49.60 et seq.
### WASHINGTON LAW AGAINST DISCRIMINATION

14.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

14.2    Any person deeming himself or herself injured by any act in violation of RCW 49.60 shall have a civil action to recover the actual damages sustained by the person, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy. RCW 49.60.030(2).

14.3    Plaintiff was in fact, and so deems himself, injured by the Defendants who discriminated against him based on his race or color.

COMPLAINT AND DEMAND
No. 3:23-CV-5849

33

ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

14.4    A hate crime was committed against the Plaintiff based on his racial or ethnic background, followed by the imposition of a gag order also motivated by discriminatory factors related to his race or ethnicity.

14.5    That hate crime and gag order were unwelcome in the sense that Plaintiff and society regard the conduct as undesirable and offensive, and Plaintiff did not solicit or incite it.

14.6    This conduct was so offensive that it altered the conditions of Plaintiff's employment.

14.7    Either: a manager or corporate officer of CCFD6 participated in the conduct; or management knew, through complaints or other circumstances, of this conduct, and CCFD6 failed to take reasonably prompt and adequate corrective action reasonably designed to end it; or management should have known of this harassment, and CCFD6 failed to take reasonably prompt and adequate corrective action reasonably designed to end it.

14.8    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## XV.    CLAIM ELEVEN
### STATE LAW
### WRONGFUL DISCHARGE - CONSTRUCTIVE

15.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

15.2    CCFD6 deliberately made the working conditions intolerable for Plaintiff.

15.3    A reasonable person would have been forced to resign.

15.4    Plaintiff resigned solely because of the intolerable conditions.

15.5    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## XVI.    CLAIM TWELVE
### STATE LAW
### WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

16.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

16.2    The State of Washington has declared that the practices of discrimination based on race or color is a matter of state concern, and that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state. RCW 49.60.010.

16.3    The right to be free from discrimination because of race or color is recognized as and declared to be a civil right. RCW 49.60.030(1)(a).

16.4    There is a clear public policy against workplace discrimination or harassment based on race or color.

16.5    If victims of a hate crime at the hands of public employees are not allowed to speak out it would jeopardize the state policy against work place discrimination and violence based on race and or color.

16.6    Plaintiff was constructively discharged because he was the victim of discrimination and violence based on race and or color and was prohibited from reporting it to law enforcement by CCFD6.

16.7    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## XVII. <u>CLAIM THIRTEEN</u>
### STATE LAW
### OUTRAGE

17.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

17.2    Defendants engaged in conduct that is extreme or outrageous.

17.3    Defendants acted with the intent to inflict emotional distress or acted recklessly when it was substantially certain that emotional distress would result from their conduct.

17.4    Defendants' conduct was the actual and proximate cause of the Plaintiff's emotional distress.

17.5    The emotional distress suffered by the Plaintiff was so severe that no reasonable person should be expected to endure it.

17.6    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## XVIII.    CLAIM FOURTEEN
### STATE LAW
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

18.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

18.2    Defendants owed a legal duty of care to the Plaintiff.

18.3    Defendants breached that duty by failing to exercise reasonable care.

18.4    Plaintiff suffered severe emotional distress as a result of the defendant's conduct. The distress must be more than fleeting or trivial.

18.5    Defendant's negligent conduct was the proximate cause of the plaintiff's emotional distress.

18.6    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## XIX.   CLAIM FIFTEEN
### STATE LAW
### NEGLIGENT TRAINING/SUPERVISION

19.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

19.2    Defendants owed a legal duty of care to Plaintiff to properly train coworkers so as to have a safe work environment free of harassment.

19.3    Defendants breached that duty by failing to train Erickson.

19.4    Defendant's negligence was the proximate cause of plaintiff's injury.

19.5    As a result of the acts of the Defendants, Mr. Page has suffered injury and emotional distress and humiliation, and is entitled to compensation in an amount to be proven at trial for his economic losses and non-economic losses, and statutory attorney fees and costs, and such other relief as is deemed appropriate by the court.

## XX.   INDEMNIFICATION

20.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

20.2    In committing the acts alleged in the preceding paragraphs, Defendants acted at all relevant times within the scope of their employment for CCFD6.

20.3    As a result, pursuant to State Law, the CCFD6 must indemnify the Defendants for any judgment against them.

## XXI.   RESPONDEAT SUPERIOR

21.1    Plaintiff hereby restates and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

21.2    In committing the acts alleged in the preceding paragraphs, Defendant deputies acted at all relevant times within the scope of their employment for CCFD6.

21.3    Defendant CCFD6, as principal, is liable for all torts, including state law torts, committed by its agents.  CCFD6, as principal, should also be liable for the constitutional violations committed by its officers to the extent that, by law and County Code, CCFD6 is wholly responsible for providing the defense of individual Defendant Officers and for indemnifying them against any judgment or verdict that may result.

## XXII. <u>DAMAGES AND PRAYER FOR RELIEF</u>

22.1    For the reasons stated above, Plaintiffs pray for the following relief:

22.2    For judgment against each of the Defendants, jointly and severally, for monetary special damages in an amount to be determined at trial;

22.3    For judgment against each of the Defendants, jointly and severally, for damages in the form of economic losses, non-economic loss, personal injuries, emotional distress, embarrassment, loss of reputation, loss of enjoyment of life and humiliation, in an amount presently unknown and to be made more certain at the time of trial, as well as incurring attorney fees and other losses;

22.4    For judgment against each of the Defendants, jointly and severally, for general compensatory damages in an amount to be determined at trial;

22.5    For judgment for punitive damages against each of the Defendants, jointly and severally, in an amount to be determined at trial;

COMPLAINT AND DEMAND
No. 3:23-CV-5849

39

ANGUS LEE LAW FIRM, PLLC
9105A NE HWY 99, STE 200
Vancouver, WA 98665
(P) 360-635-6464 (F) 888-509-8268

22.6   For attorney fees and costs authorized by statute, including reasonable

attorneys fees pursuant to state and federal law;

22.7   WHEREFORE, Plaintiffs pray for damages as previously mentioned,

together with other equitable relief, costs of this action and reasonable attorneys' fees,

prejudgment interest on any lost wages or liquidated sums, punitive damages and

any other relief as this Court deems equitable and just.

### XXIII.        <u>JURY DEMAND</u>

23.1   Plaintiff is entitled to and hereby demands trial by a jury.

DATED Wednesday, September 20, 2023.

ANGUS LEE LAW FIRM, PLLC

<u>*/S/ D. Angus Lee*</u>
D. Angus Lee, WSBA# 36473
Attorneys for Plaintiff
Angus Lee Law Firm, PLLC
9105A NE HWY 99 Suite 200
Vancouver, WA 98665
Phone: 360.635.6464 Fax: 888.509.8268
E-mail: Angus@AngusLeeLaw.com