1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ELIJAH PAGE,

                    Plaintiff,

        v.

CLARK COUNTY FIRE DISTRICT 6 et al.,

                    Defendant.

CASE NO. 3:23-cv-05849-DGE

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 66)

## I.    INTRODUCTION

This matter comes before the Court on Defendant Jon Erickson's motion for partial summary judgment.  (Dkt. No. 66.)  Plaintiff Elijah Page's operative complaint asserts nine claims against Erickson.  (Dkt. No. 20.)  Erickson seeks dismissal of five of those claims.  For the reasons stated herein, Erickson's motion for partial summary judgment is GRANTED.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On February 24, 2022, Page and Erickson were identified as new hires of Defendant Clark County Fire District 6 (the "District").  (Dkt. No. 67-1 at 2.)  Page was hired as an Entry Firefighter and Erickson was hired as a Lateral Firefighter/Paramedic.  (*Id.*)  On May 1, 2022, Erickson and Page started at the District's fire academy with their recruit class as probationary employees.  (*See* Dkt. No. 68-1 at 3.)  Page was the only African American member of the recruit class.  (Dkt. No. 83 at 1.)

On June 7, 2022, the recruit class was receiving training on knot tying.  The District instructed the recruits to practice knot tying during their lunch break.  (Dkt. No. 82-9 at 14; *see also* Dkt. No. 65-13 at 22–27.)  During lunch, Erickson "began tying a prussik with a double fisherman's knot" and then placed it over Page's head/neck.  (Dkt. No. 65-13 at 28.)  The prusik knot "could be perceived as a noose [because] it has a barrel-type pattern resembling . . . a noose" though "it does not function as a noose."  (Dkt. No. 82-9 at 6.)  Page described the incident as follows: "I was seated at my desk in the training class room.  John Erickson walked over to my desk and placed a noose around my neck and tightened the knot."  (Dkt. No. 65-13 at 27.)  "As an African American, [Page] was acutely aware of the racial significance and historical context of lynching, which made the incident not only threatening but deeply humiliating."  (Dkt. No. 83 at 1.)  "[The] act was unwelcome, offensive, and carried a terrifying historical weight for [Page]."  (*Id*. at 2.)

Immediately following the incident, Riley Hawken (a fellow recruit) texted Officer Mason Svatos.  (Dkt. No. 65-14 at 2–5.)  Hawken briefly report what had happened, voiced his concern about the incident, and sought direction on what should be done.  (*Id*.)  Svatos was uncertain.  (*Id*.)  At the afternoon break, Hawken and Svatos met to discuss the matter and

1    shortly thereafter Page approached them.  (Dkt. No. 65-12 at 3.)  Hawken and Svatos expressed

2    that the incident was not acceptable and asked Page his preference on proceeding.  (*Id*.)  Hawken

3    then reported the incident to Captain Simukka.  (*Id*. at 4.)

4          Eventually, the situation was elevated up to Defendant Chief David Russell.  (Dkt. No.

5    65-9 at 3.)  Russell spoke with Erickson about the incident.  (*Id*. at 7.)  Russell placed Erickson

6    on Administrative leave for the remainder of the day, gathered Erickson's belongings, and

7    escorted him off District property.  (*Id*. at 8.)

8          Russell also instructed witnesses to write statements on June 7, 2022.  (*Id.* at 5.)  After

9    the recruits wrote their statements, Simukka told the class "[t]o avoid getting wrapped up into the

10   rumor mill or coffee table talk, the investigation is occurring.  Confidentiality needs to be

11   maintained during the investigation to protect the process."  (Dkt. No. 65-10 at 9.)

12         On June 9, 2022, Fire Chief Kristan Maurer informed Erickson: "you have not

13   successfully met your probationary period and will no longer be employed by the

14   District . . . .  We appreciate your interest in Clark County Fire District 6 and wish you the best in

15   the future."  (Dkt. No. 65-13 at 31; *see also* Dkt. No. 65-5 at 5.)  Maurer also sent a

16   memorandum which stated:

17         The District has terminated employment with Firefighter/Paramedic Jon
           Erickson . . . .
18
19         There was an incident in the academy and the District took swift and appropriate
           action.  An investigation was competed, and the decision was made that Mr.
20         Erickson did not successfully meet his probationary period.

21         As with any disciplinary action, the District maintains confidentiality.  I would
           ask that we all respect each other's privacy and not contribute to passing along
22         erroneous information.  There are only a few personnel that were involved in this
           process that know all the details.

23

24

All personnel involved, including Mr. Erickson have been offered EAP and Peer Support. When the time is appropriate, the District will evaluate what changes we can make to ensure that this type of incident doesn't occur in the future.

(Dkt. No. 65-17 at 2; *see also* Dkt. No. 65-11 at 12, 17.)

Page's operative complaint (Dkt. No. 20) alleges the following claims against Erickson:

- Claim Two for hostile work environment pursuant to 42 U.S.C. § 1981, 1983, 1985, and 1986. (*Id.* at 28.)

- Claim Three for hostile work environment caused by coworker pursuant to 42 U.S.C. § 1981, 1983, 1985, and 1986. (*Id.* at 29.)

- Claim Eight for hate crime under Washington Revised Code§ 9A.36.083. (*Id.* at 34.)

- Claim Nine for state law battery. (*Id.*)

- Claim Ten for violation of the Washington Law Against Discrimination ("WLAD"), Washington Revised Code Chapter 49.60. (*Id.* at 35.)

- Claim Eleven for constructive wrongful discharge. (*Id.* at 36.)

- Claim Twelve for wrongful discharge in violation of public policy. (*Id.* at 37.)

- Claim Thirteen for outrage. (*Id.* at 38.)

- Claim Fourteen for negligent infliction of emotional distress. (*Id.* at 40.)

Erickson seeks summary dismissal of Claims Two, Three, Ten, Eleven, and Twelve. (Dkt. No. 66.)

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the

burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986) (nonmoving party must present specific, significant probative evidence, not simply "some

metaphysical doubt.").  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a

material fact exists if there is sufficient evidence supporting the claimed factual dispute,

requiring a judge or jury to resolve the differing versions of the truth.  *T.W. Elect. Service Inc. v.*

*Pac. Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

   The determination of the existence of a material fact is often a close question.  The court

must consider the substantive evidentiary burden that the nonmoving party must meet at trial—

e.g., a preponderance of the evidence in most civil cases.  *Id.*

> [T]he nonmoving party may not rely mere allegations in the pleadings in order to
> preclude summary judgment.  Instead, the nonmoving party must set forth, by
> affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is
> a genuine issue for trial.  Hence, the nonmoving party may not merely state that it
> will discredit the moving party's evidence at trial and proceed in the hope that
> something can be developed at trial in the way of evidence to support its claims.
> Instead, it must produce at least some significant probative evidence tending to
> support the complaint.

*Id.* (internal quotation marks and citations omitted).  Conclusory, nonspecific statements in

affidavits are not sufficient, and "missing facts" will not be "presumed."  *Lujan v. Nat'l Wildlife*

*Fed'n*, 497 U.S. 871, 888–89 (1990).

## IV. DISCUSSION

### A. Page's Response to Erickson's Partial Motion for Summary Judgment.

   Page filed a 56-page "Joint Response to Defendants' Motions for Summary Judgment."

(Dkt. No. 81.)  Page uses six sentences in the "Joint Response" to respond to Erickson's motion:

> Plaintiff opposes Erickson's motions to dismiss claims 2, 3, 10, 11, and 12.
> While Erickson seeks dismissal of these specific claims, it is important to

1

recognize that claims eight (hate crime), nine (battery), thirteen (outrage), and fourteen (negligent infliction of emotional distress) will still proceed to trial against Erickson regardless of the outcome of these motions.

2

The arguments presented in Erickson's motions to dismiss are substantially similar to those put forth by FD6 in their respective motions for the same claims. To avoid redundancy, the plaintiff responds to his motions by incorporating all arguments previously presented, as referenced above.

3

4

5

Given the serious nature of the allegations and considering that significant claims remain active and are set to proceed to trial, it is critical for the court to consider the broader context and potential implications of dismissing any claims against Erickson at this stage.  This comprehensive view is essential to ensure a just evaluation of the case.

6

7

8

(Dkt. No. 81.)

9

Though brief, these six sentences are far from succinct as Plaintiff fails to directly

10

address any of Erickson's arguments.  Without more, it is not for the Court to discern what Page

11

means in claiming "Erickson's motions to dismiss are substantially similar to those put forth by"

12

the District.  Nor is it for the Court to divine from this six-sentence opposition which facts create

13

genuine issues of material fact as to Page's claims against Erickson.  *See Greenwood v. F.A.A.*,

14

28 F.3d 971, 977 (9th Cir. 1994) ("[j]udges are not like pigs, hunting for truffles buried in

15

briefs") (internal quotation marks omitted).  The Court will not formulate factual or legal

16

arguments on Page's behalf to challenge the conclusions Erickson advances in his motion for

17

partial summary judgment.

18

Thus, as to the five claims at issue, Page fails to identify any genuine issue of material

19

fact and fails to challenge the conclusion that Erickson is entitled to judgment as a matter of law.

20

**B. Page's Claim Under the Washington Law Against Discrimination (Claim 10)**

21

Erickson argues "[t]he Court should dismiss Plaintiff's WLAD claim against Erickson,

22

because the WLAD applies only to supervisors and employers and it is undisputed that Erickson

23

was not Plaintiff's supervisor or employer."  (Dkt. No. 66 at 8.)

24

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 66) - 6

1    "[A] non-supervising coworker's behavior generally cannot form the basis of a

2    discrimination claim." *Rodriguez v. Boeing Co*., No. C18-1213-JCC, 2021 WL 4847957, at *3

3    (W.D. Wash. Oct. 18, 2021), *aff'd*, No. 21-35951, 2024 WL 1328774 (9th Cir. Mar. 28, 2024)

4    (citing *Jenkins v. Palmer*, 66 P.3d 1119, 1121 (Wash. Ct. App. 2003)).  This is because the

5    WLAD applies to an employer's "unfair practice[s]."  *See* Wash. Rev. Code § 49.60.180.  Under

6    the WLAD, an employer is defined as "any person acting in the interest of an employer, directly

7    or indirectly, who employs eight or more persons, and does not include any religious or sectarian

8    organization not organized for private profit."  Wash. Rev. Code § 49.60.040(11).  There is "no

9    basis to read [the WLAD] as covering acts . . . committed by a co-worker acting alone.  Thus, a

10    plaintiff who suffered reprehensible attacks [by a co-worker] must rely on other legal theories to

11    obtain relief."  *Jenkins*, 66 P.3d at 1121.

12        Here, there are no facts indicating Erickson was "acting in the interest of" the District

13    "directly or indirectly" when Erickson placed a knotted rope around Page's neck.  Plaintiff

14    provides no facts suggesting that the District instructed Erickson to place the rope around Page's

15    neck.  Moreover, Erickson was not in a supervisory role at the District, as both Erickson and

16    Page were probationary employees.  There is no basis to conclude Erickson was Page's employer

17    under the WLAD.

18        Page's six-sentence opposition did not directly respond to Erickson's WLAD arguments

19    and otherwise failed to identify a genuine issue of material fact as to Page's WLAD claim.

20    Erickson is entitled to judgment as a matter of law on Page's WLAD claim.

21    **C.  Page's Claims for Wrongful Discharge (Constructive) and Wrongful Discharge in Violation of Public Policy (Claims 11 and 12)**

22

23        As a preliminary matter, Erickson argues that Page's claim for constructive wrongful

24    discharge (Claim 11) is identical to Page's claim for wrongful discharge in violation of public

1    policy (Claim 12).  (Dkt. No. 66 at 13) ("claim [11] is identical to Plaintiff's wrongful discharge

2    in in violation of public policy").  Page's six-sentence opposition does not address this argument

3    or otherwise identify the distinction between Claims 11 and 12 as to Erickson.  Accordingly, for

4    purposes of Erickson's motion, the Court concludes these claims are the same.

5         Plaintiff asserts a wrongful discharge claim against Erickson.  (Dkt. No. 20 at 37–38.)

6    Erickson argues Washington has not recognized "individual liability on a plaintiff's coworker for

7    wrongful discharge in violation of public policy" and that Page "cannot establish a prima facie

8    claim of wrongful constructive discharge in violation of public policy[.]"  (Dkt. No. 66 at 11.)

9         "The claim of wrongful discharge in violation of public policy may arise when an

10   *employer* discharges an employee for reasons that contravene a clear mandate of public policy."

11   *Korslund v. DynCorp Tri-Cities Services, Inc.*, 125 P.3d 119, 124 (Wash. 2005) (emphasis

12   added).  A wrongful discharge in violation of public policy may be premised on a constructive

13   discharge.  *Id*. at 125; *see also Snyder v. Med. Serv. Corp. of E. Wash.*, 35 P.3d 1158, 1161

14   (Wash. 2001) (Washington "recognizes an action for wrongful discharge which may be express

15   or constructive.").  A "[c]onstructive discharge occurs when an *employer* deliberately makes an

16   employee's working conditions intolerable, thereby forcing the employee to resign."  *Colville v.*

17   *Cobarc Services, Inc.*, 869 P.2d 1103, 1107 (Wash. Ct. App. 1994) (emphasis added).

18        As with Erickson, the Court is unaware of any case law supporting a claim for wrongful

19   discharge (express or constructive) against a co-worker.  Page's six-sentence opposition offers

20   no fact and no authority to support Page's wrongful discharge claim against Erickson.  Page has

21   failed to identify a genuine issue of material fact or legal authority in support of his wrongful

22   discharge claim(s) against Erickson. Accordingly, Erickson is entitled to judgment as a matter of

23   law on Page's wrongful discharge claim(s).

24

**D.  Page's Claims for Hostile Work Environment (Claims 2 and 3)**

Erickson argues that Page's claims for hostile work environment brought under 42 U.S.C. §§ 1981, 1983, 1985, and 1986 "fail as a matter of law because it is undisputed that Erickson was not Plaintiff's employer or supervisor, there is no genuine issue of material fact that Erickson was not acting under the color of state law at the time of the incident, and there is absolutely no evidence that Erickson conspired with any other defendant (or individual)." (Dkt. No. 66 at 14–15.)

Regarding Page's § 1981 claim, "Section 1981 establishes substantive rights that a state actor may violate.  It does not contain a remedy against a state actor for such violations.  A plaintiff seeking to enforce rights secured by § 1981 against a state actor must bring a cause of action under § 1983." *Yoshikawa v. Seruirant*, 74 F.4th 1042, 1047 (9th Cir. 2023).  To the extent Page asserts a § 1981 claim against Erickson independent of Page's § 1983 claim, it is dismissed as a matter of law.

As for Page's § 1983 claim (and even assuming the § 1983 claim incorporates an alleged violation of § 1981), to establish a claim under § 1983 against Erickson, Page must prove "(1) that a right secured by the Constitution or the laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

"[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).  "Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." *Ottman v. City of Independence, MO.*, 341 F.3d 751, 762 (9th Cir. 2003) (quotation marks omitted).  "When the alleged harassment does not involve the use of either state authority or position, courts have declined to

find co-workers liable under section 1983." *Id.*; *see also Hughes v. Halifax Cnty. Sch. Bd.*, 855 F.2d 183, 186–87 (4th Cir. 1988) (co-workers were not acting with state authority when they taunted plaintiff and performed a mock hanging of plaintiff).  Thus, where there is no evidence of supervisory control or authority by a co-worker, there is no § 1983 liability.  *Id.* ("[T]he summary judgment facts clearly establish [the defendant] was a co-worker with no supervisory control or authority over [the plaintiff].  Because [the defendant] was a private actor, he is not liable pursuant to section 1983.").

Erickson argues there is no evidence he was acting under color of state law.  (Dkt. No. 66 at 16.)  The undisputed facts establish Erickson maintained no supervisory control or authority over Page, and Page's six-sentence opposition fails to identify any facts to the contrary. Erickson was not acting under the color of state law when he placed the knotted rope around Page's neck.  As such, Page's § 1983 claim(s) against Erickson fail as a matter of law.

Regarding Page's § 1985 and 1986 claims, "Section 1986 imposes liability on every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation.  A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985." *Karim-Panehi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).  Page's § 1986 claim, therefore, is dependent on Page's § 1985 claim.  Similarly, "the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (1989).

Page's operative complaint does not identify which part of § 1985 Page's claim against Erickson is based on.  (*See* Dkt. No. 20 at 28–30.)  Erickson asserts there is no evidence supporting a claim under any part of § 1985.  Erickson identifies that Page is not a federal officer and was not seeking federal employment.  (Dkt. No. 66 at 19.)  Thus, § 1985(1) is inapplicable.

1  *See Whitehorn v. F.C.C.*, 235 F. Supp. 2d 1092, 1101 (D. Nev. 2002) ("Section 1985(1) affords

2  protection only to federal officers and prospective federal officers.").

3  Erickson further asserts there are no facts supporting a claim under § 1985(2) or (3).

4  (Dkt. No. 66 at 19–22.)  § 1985(2) requires evidence of "conspiracies to interfere with the

5  administration of justice in federal courts" or "conspiracies to interfere with justice in state courts

6  'with intent to deny any citizen' '*due and equal protection* of the laws[.]'"  *Bretz v. Kelman*, 773

7  F.2d 1026, 1028 (9th Cir. 1985) (emphasis in original).  Similarly, § 1985(3) requires evidence

8  of "private conspiracies to deny 'any person or class of persons . . . the *equal protection* of the

9  laws,'" and "conspiracies to interfere with voting in federal elections."  *Id*. at 1028–29 (emphasis

10  in original).

11  Here, the undisputed facts establish Erickson acted alone when he placed a knotted rope

12  around Page's neck.  The undisputed facts further establish Erickson was immediately removed

13  from the District and then discharged two days after the incident.  There are no facts indicating

14  Erickson was involved in the investigation (other than as a witness of the incident), that Erickson

15  assisted in coordinating the District's investigation, or that Erickson was involved in the

16  District's response to the incident.

17  The facts do not support a conclusion that Erickson was involved in any § 1985

18  conspiracy against Page.  Again, Page's six-sentence opposition fails to identify any facts

19  supporting a contrary conclusion.  Accordingly, Page's § 1985 and § 1986 claims fail as a matter

20  of law.

1

**V.    CONCLUSION**

2

Having considered Erickson's motion, the briefing of the parties, and the remainder of

3

the record, the Court finds and ORDERS that Defendant's motion for partial summary judgment

4

is GRANTED.

5

    1.  Page's Washington Law Against Discrimination claim against Erickson is DISMISSED.

6

7

    2.  Page's claim of wrongful discharge in violation of public against Erickson is DISMISSED.

8

    3.  Page's claim of constructive wrongful discharge against Erickson is DISMISSED.

9

    4.  Page's claims under § 1981 against Erickson are DISMISSED.

10

    5.  Page's claims under § 1983 against Erickson are DISMISSED.

11

    6.  Page's claims under § 1985 against Erickson are DISMISSED.

12

    7.  Page's claims under § 1986 against Erickson are DISMISSED.

13

Dated this 4th day of November, 2024.

14

15

16

David G. Estudillo
United States District Judge

17

18

19

20

21

22

23

24

ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 66) - 12