UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ELIJAH PAGE,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>CLARK COUNTY FIRE DISTRICT 6 et al.,<br><br>　　　　　　　Defendant. | CASE NO. 3:23-cv-05849-DGE<br><br>ORDER DECLINING SUPPLEMENTAL JURISDICTION AND DISMISSING WITHOUT PREJUDICE |

　　　This action arises from Elijah Page's claims related to Defendant Jon Erickson's June 7, 2022, conduct in which he placed a knotted rope around Page's neck.  This matter is before the Court after having entered orders (Dkt. Nos. 102, 103-1) of summary judgment dismissing all claims against all defendants except for four state-law claims against Erickson.  Having considered the relevant record, the Court declines supplemental jurisdiction and DISMISSES Plaintiff's remaining state-law claims without prejudice.

ORDER DECLINING SUPPLEMENTAL JURISDICTION AND DISMISSING WITHOUT PREJUDICE - 1

# I    BACKGROUND

In the interest of judicial economy, the Court assumes familiarity with the factual and procedural background summarized in prior orders. (*See* Dkt. Nos. 102, 103-1.)

As of November 4, 2024, all claims have been dismissed except for four remaining state-law tort claims against Erickson: hate crime (Claim 8), battery (Claim 9), outrage (Claim 13), and negligent infliction of emotional distress (Claim 14). (*Id.*)

On November 12, 2024, the Court held a status conference and requested briefing on whether the Court should continue exercising supplemental jurisdiction over the remaining state-law claims. (Dkt. No. 104.) Plaintiff requests the Court retain jurisdiction over the remaining state-law claims. (Dkt. No. 106.) Erickson takes no position on whether the Court should exercise its supplemental jurisdiction. (Dkt. No. 107.)

Separately, on November 29, 2024, Plaintiff filed a notice of appeal, seeking appellate review of this Court's prior dismissal orders. (Dkt. No. 111.) Plaintiff also filed a motion to stay the remaining claims pending Plaintiff's appeal. (Dkt. No. 112.)

# II    LEGAL STANDARD

A district court has supplemental jurisdiction over state law claims that are "so related" to the federal law claims "that they form a part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). However, a court may decline to exercise supplemental jurisdiction over state-law claims when a "district court has dismissed all claims over which it ha[d] original jurisdiction[.]" 28 USC § 1367(c)(3).

In considering whether to continue exercising supplemental jurisdiction, a district court should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise

jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie–Mellon Univ. v. Chill, Jr.*, 484 U.S. 343, 350 (1988). Where "all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7. If a court declines to exercise supplemental jurisdiction and retain the remaining state-law claims, it may either dismiss the case or remand the case to state court. *Id.* at 357 (holding that district courts may remand rather than dismissing a removed case where only state law claims remain). A district court has broad discretion in deciding whether to retain supplemental jurisdiction. *See, e.g., Schneider v. TRW, Inc.*, 938 F.2d 986, 993–94 (9th Cir. 1991) ("Supreme Court and Ninth Circuit precedent teaches us that the district court is in the best position to judge the extent of resources invested in a case and that, therefore, the district court's discretion ought not be lightly disturbed.").

### III    DISCUSSION

The Court finds the circumstances of the case warrant dismissing without prejudice the remaining state law claims.

**A. Judicial Economy**

Plaintiff argues retaining jurisdiction promotes judicial economy because declining to exercise supplemental jurisdiction would necessitate duplicative proceedings, thereby wasting judicial resources. (Dkt. No. 106 at 2.) However, while the remaining state-law tort claims (battery, hate crime, outrage, and negligent infliction of emotional distress) arise from the same case or controversy as the federal-law claims, the Court relied upon a factually distinct evidentiary record to resolve Plaintiff's federal-law claims.

First, "[a] defendant is liable for battery if (a) 'he [or she] acts intending to cause a harmful or offensive contact with the [plaintiff or a third party], or an imminent apprehension of such contact, and (b) a harmful or offensive contact with the [plaintiff] directly or indirectly results.'" *Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 204 (Wash. 2014) (citing Restatement (Second) of Torts § 13 (1965)). As such, the relevant facts are whether Erickson intentionally placed the rope around Plaintiff's neck and whether such act was offensive or harmful to Plaintiff.

Second, to establish a claim under the Washington Hate Crime statute, Washington Revised Code § 9A.36.08, "a plaintiff must show that the defendant injured [him], damaged [his] property, or threatened to inflict such an injury or damage because of plaintiff's race, color, religion, ancestry, national origin, gender, sexual orientation, or mental, physical, or sensory handicap." *Smith-Jeter v. Artspace Everett Lofts Condo. Ass'n*, No. C14-1584-JPD, 2016 WL 898543, at *12 (W.D. Wash. Mar. 9, 2016), *aff'd*, 689 F. App'x 862 (9th Cir. 2017) (internal citations omitted). Here, the legally significant facts are whether Erickson injured Plaintiff by placing the rope around his neck and whether Erickson's action was prompted by Plaintiff's African American identity.

Third, to establish the tort of outrage, Plaintiff must prove "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003). Thus, the significant facts in resolving Plaintiff's outrage claim are whether: (1) Erickson's conduct in placing the rope around Plaintiff's neck was extreme and outrageous, (2) Erickson intended to inflict emotional distress, and (3) Plaintiff suffered severe emotional distress.

Fourth, in Washington, to state a claim for negligent infliction of emotional distress, a plaintiff must prove duty, breach, proximate cause, damage, and "objective symptomatology." *Kumar*, 325 P.3d at 205. To maintain an action for negligent infliction of emotional distress, a plaintiff's distress must be "susceptible to medical diagnosis and prov[able] through medical evidence." *Id.* As such, the relevant facts in resolving Plaintiff's claim for negligent infliction of emotional distress are whether Erickson owed a duty to Plaintiff, whether Erickson breached that duty by placing the rope around Plaintiff's neck, and whether Erickson's action caused Plaintiff damages that may be proven through medical evidence.

In short, Plaintiff's remaining state-law claims focus exclusively on Erickson's individual conduct and not on the District Defendants' actions, conduct, or policies.

In contrast, the Court granted partial summary judgment in favor of Erickson for Plaintiff's claims under the Washington Law Against Discrimination, wrongful discharge, and hostile work environment. There, Erickson argued Plaintiff could not sustain such claims because these causes of action do not contemplate non-supervisory coworker liability. Thus, at summary judgment the only significant fact the Court considered was whether Erickson in the course of his employment maintained a supervisory role.

Similarly, the Court granted District Defendant's motion for summary judgment, resolving Plaintiff's §1981 Claims, § 1983 Claims (Claims 1, 2, 3, 4, 5, 6, and 7), and §§ 1985-6 Claims. There, the Court considered the following evidence: Plaintiff's and Erickson's hiring, the District's investigation following the incident, the District's termination of Erickson's employment, the alleged "gag orders," Plaintiff's departure from the District, and the District's policies and training.

In sum, the Plaintiff's remaining state-law claims are factually and legally distinct from those claims previously dismissed. Thus, there would not be duplicative trials in the event Plaintiff successfully reverses this Court's orders.

### B. Convenience

Plaintiff argues convenience favors retaining supplemental jurisdiction because splitting between federal and state courts would inconvenience the parties, and witnesses would be required to participate in two trials. (Dkt. No. 106 at 2–3.) This Court is not currently convinced there will be two trials. But even assuming Plaintiff is successful on appeal, there would be two trials whether this Court retained or declined supplemental jurisdiction because as it currently stands, the remaining claims against Erickson would proceed to trial while Plaintiff seeks appeal. Therefore, at present Plaintiff would continue to litigate his appeal before the Ninth Circuit and pursue his state-law claims against Defendant Erickson in separate trials whether or not the Court retains jurisdiction.

Moreover, upon dismissal, Plaintiff would pursue his remaining claims in the Clark County Superior Court located in Vancouver, Washington. Plaintiff's counsel, Plaintiff, Erickson, and all the witnesses live in or near the Clark County area. They would spend more time, money, and energy attending and participating in trial in Tacoma rather than in Clark County, resulting in a greater impact to their daily personal and professional responsibilities. It, therefore, would be more convenient and less costly for all involved to pursue trial on the remaining state law claims in Clark County Superior Court.

### C. Fairness

When analyzing fairness in the context of a motion to remand, courts have looked to whether "a surer-footed reading" of state law would be available in state court, *Gibbs*, 383 U.S.

at 726; whether "the plaintiff has engaged in any manipulative tactics" in seeking remand, *Carnegie-Mellon*, 484 U.S. at 357; and where the plaintiff originally filed the action, *King v. Zak*, No. C16-0397JLR, 2016 WL 1579234, at *5 (W.D. Wash. Apr. 20, 2016) (citing *Fletcher v. Solomon*, No. C-06-5492 RMW, 2006 WL 3290399, at *3-4 (N.D. Cal. Nov. 13, 2006)).

Plaintiff argues fairness supports the Court's continued jurisdiction because "[f]orcing Plaintiff to litigate parallel actions in separate courts would be unfair and burdensome." (Dkt. No. 106 at 3.) Further, Plaintiff argues "[i[f the appellate court reverses the dismissal of the claims against the Fire District Defendants, Plaintiff would face the prospect of retrying the same issues, potentially leading to inconsistent judgments." (*Id.*)

Plaintiff's arguments are not typically evaluated under the fairness factor, but rather seem to relate to the factors of judicial economy and convenience. As already identified, though all of Plaintiff's claims arose out of Erickson's conduct, the claims remaining against Erickson are factually and legally distinct from the claims resolved by the Court. Thus, there would not be a retrial on the same issues or even the same facts even assuming Plaintiff is successful in reversing this Court's prior orders. Nor are there parallel actions as Plaintiff would be appealing discrete legal issues applicable only to the District Defendants independent of the legal issues advanced against Erickson in the remaining state law claims.

And while Plaintiff initiated the litigation in this forum and there is no basis to find he has engaged in any manipulative tactics, a state court presiding over state law claims will result in a sure-footed reading and application of state law.

**D. Comity**

ORDER DECLINING SUPPLEMENTAL JURISDICTION AND DISMISSING WITHOUT PREJUDICE - 7

The Supreme Court has counseled that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726.

Plaintiff argues retaining jurisdiction does not offend principles of comity because the Court is capable of adjudicating state law claims, "especially when they are intertwined with federal issues already before the court." (Dkt. No. 106 at 3.) While the Court is capable of adjudicating Plaintiff's state-law claims, as a practice, the Court should avoid needless decisions of state law and allow state-courts to adjudicate such claims. Further, as discussed previously, the remaining state-law claims are not "intertwined" with the federal-law claims the Court resolved. *See Supra* III.A.

Thus, considering the distinct nature of the federal law claims resolved by the Court versus the remaining state claims against the Erickson, comity would be better served by having the remaining claims decided by a state trial court.

Having considered the principles of judicial economy, convenience, fairness, and comity, the Court finds dismissing the remaining claims without prejudice is warranted.

### IV    CONCLUSION

Accordingly, the Court declines to continue exercising supplemental jurisdiction over the remaining state-law claims. It, therefore, is ORDERED:

1. The remaining state law claims against Erickson are DISMISSED without prejudice;
2. Plaintiff's Motion to Stay (Dkt. No. 112) is DENIED as moot;
3. All pending motions and deadlines in this matter are STRICKEN;
4. The Clerk of the Court is directed to close this matter.

Dated this 17th day of December, 2024.

David G. Estudillo
United States District Judge

ORDER DECLINING SUPPLEMENTAL JURISDICTION AND DISMISSING WITHOUT PREJUDICE - 9